IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| HOWELL W. WOLTZ, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 5:10-0095 |
| | ) |
| THOMAS SCARANTINO, | ) |
| Camp Administrator, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

It appears that Plaintiff has fully stated his claims in this matter requesting injunctive relief (Document Nos. 12 and 18.) and damages. Accordingly, the undersigned hereby considers whether this matter should proceed or be summarily dismissed pursuant to 28 U.S.C. § 1915A and concludes, and therefore respectfully recommends, that this matter should be dismissed.

**BACKGROUND**

By letter dated January 24, 2010, addressed to United States District Judge Berger (Document No. 1.), Plaintiff complained that (1) Defendants have denied him and other inmates access to copy cards and supplies for doing their legal work and (2) the District Court is not giving priority to their actions as required by law. Plaintiff attached three Inmate Request to Staff forms addressed to Defendants Scarantino and Clifton by which he complained that copy cards and ribbons for manual typewriters had not been available at the commissary for a period of weeks stating in one that "[i]t is impossible to make timely court responses when supplies are not available."[1]

---

[1] Plaintiff has initiated eleven lawsuits in this Court. Six of the cases are currently pending including the instant case and the following five cases which Plaintiff initiated after the instant case: (1) *Woltz v. FCI Beckley, et al.*, Civil Action No. 5:10-0487; (2) *Woltz v. United States, et al.*, Civil

On February 16, 2010, Plaintiff filed a Complaint (Document No. 4.) stating his claim as follows:

> Defendants deprived Plaintiff of prison administrative remedy process, thereby resulting in denial of 1) due process, 2) access to Court and attorney, and 3) needed medical treatment, implicating Fifth, Sixth and Eighth Amendment Protections.

Plaintiff named Thomas Scarantino, FCI Beckley Camp Administrator, Laura Trump, Administrative Secretary, Thomas Clifton, Unknown Receiving and Discharge and Mail Room Clerks and the United States as Defendants. Plaintiff describes how the Defendants refused to issue and accept administrative remedy forms, improperly opened incoming legal mail and returned outgoing legal mail and threatened and harassed Plaintiff by searching his legal files in January, 2009, charging him thereafter with assisting other inmates with their legal matters and terminating his job as a law librarian in retaliation for filing administrative complaints and initiating Court proceedings against them. Plaintiff indicates that he "[f]iled written complaints and appeals" in seeking to exhaust his administrative remedies and they were "[i]gnored, destroyed, diverted, or held until time-barred." Plaintiff attached a copy of his (1) February 17, 2009, Inmate Request to Staff form addressed to Case Manager Smith about the January, 2009, search, the charges against him and

---

Action No. 5:10-0538; and (3) *In Re. Woltz*, Civil Action No. 5:10-mc-0077; (4) *Woltz v. Clifton, et al.*, Civil Action No. 5:10-0980; and (5) *Woltz v. Nash, et al.*, Civil Action No. 5:11-0058. Plaintiff has also litigated four actions in the Western District of North Carolina: (1) *Woltz v. United States*, Civil Action No. 3:08-0438, a Section 2255 action with relief denied by Order of the Court entered on November 8, 2010; (2) *Woltz v. United States*, Civil Action No. 3:08-0488, which Plaintiff filed in this District as a Section 2241 case (*Woltz v. United States*, Civil Action No. 5:08-1103) and this District construed as a Section 2255 action and transferred to the Western District of North Carolina, dismissed without prejudice for lack of jurisdiction after *Emmanual* notice; (3) *Woltz v. Bailey, et al.*, Civil Action No. 3:09-0211, a civil rights action in which Plaintiff claimed he was deprived of access to the Courts while incarcerated at Mecklenburg County Jail which has been dismissed for failure to state a claim; and (4) *Woltz, et al., v. Bailey, et al.*, Civil Action No. 3:09-0273, a civil rights action in which Plaintiff and two other inmates claimed deliberate indifference to their serious medical conditions which has been dismissed without prejudice. Plaintiff acted *pro se* in all of the above referenced actions and was not therefore represented by counsel in any of them.

termination of his job as law librarian; (2) his December 15, 2009, Affidavit indicating that he attempted to submit an Inmate Request to Staff form to Officer White in the medical department on that date and Officer White refused to accept it and berated and threatened him; (3) inmate Jerome Woody's administrative remedy forms, letters, Affidavit and Incident Report indicating that prison officials refused to provide him with administrative remedy forms and threatened and harassed him as he attempted to utilize the administrative remedy process[2]; (4) envelopes from the law firm of Mr. Arthur Strickland with whom Plaintiff apparently consults[3], a Court and a Judge addressed to Plaintiff designated "Special Legal Mail" and from Plaintiff to attorney Strickland, a Court and a

---

[2] Plaintiff alleged that prison officials at FCI Beckley made exhausting administrative remedies impossible, submitted documents pertaining to Mr. Woody's administrative proceedings and stated the same allegations respecting Officer White in *Woltz v. Berkebile*, Civil Action No. 5:09-1177 (Document Nos. 15 and 30.). In support of Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment in that case (Document No. 24.), Defendant submitted the Declaration of Counselor Grimes which provided as follows:

5. As a Counselor, my duties include attempting to informally resolve complaints made by inmates assigned to me, and to provide them with administrative remedy forms if a complaint cannot be resolved informally.

6. I am the assigned Counselor for inmate Woltz and have been his Counselor since his arrival to FCI Beckley.

7. Inmate Woltz has had, and continues to have access to speak with me.

8. When inmate Woltz has requested administrative remedy forms from me, I have provided him the forms.

9. I have never denied him access to administrative remedy forms.

[3] Mr. Strickland, to whom Plaintiff often refers as a "retired federal magistrate judge", has represented Plaintiff in disciplinary proceedings as is evident from his January 20, 2009, letter to the Warden of FCI Beckley included among the documents at Document No. 4, Exhibit G. Plaintiff has requested that the Court appoint Mr. Arthur P. Strickland, a Virginia attorney with his office in Roanoke, to represent him in this matter. (Document No. 9.) Plaintiff is, however, not entitled to appointment of counsel in this matter, and Mr. Strickland has not indicated that he is representing Plaintiff.

Judge designated "Special Mail"; (5) Plaintiff's January 15, 2009, BP-9 about the January 8, 2009, search of his legal materials, the disciplinary proceedings against him and termination of his job as law librarian; (6) Plaintiff's Requests for Legal Materials in February, October and December, 2009; and (7) Plaintiff's January, 2010, Inmate Request to Staff forms addressed to Defendants Scarantino and Clifton advising that typewriter ribbons and copy cards were not available in the commissary. Plaintiff requests that the District Court declare Defendants' conduct unconstitutional and enjoin them from it and compensatory and punitive damages.

On April 8, 2010, Plaintiff filed a Motion for Order and Interlocutory Relief. (Document No. 12.) Plaintiff stated that Defendants were continuing to deny him and other inmates supplies and access to facilities for attending to legal matters and requested that the District Court order that the Complaint in this matter be served upon the Defendants and require Defendants to "maintain constant supplies necessary for access to courts . . .." Plaintiff attached documents including the Declarations of two inmates indicating that typewriter ribbons and copy cards were sometimes not available in the commissary.

On April 13, 2010, Plaintiff filed a Notice to Court of New Defendant naming David A. Berkebile, Warden of FCI Beckley, as a Defendant. (Document No. 14.) Plaintiff makes Warden Berkebile a Defendant because he issued a Memorandum to the inmate population at FCI Beckley on April 6, 2010, stating as follows:

> Effective immediately, the inmate population will be restricted to purchasing two (2) inmate photocopy cards per week. Each card is pre-coded with twenty (20) photocopies per card.
>
> If you have a need of additional copies, through verification by your Unit Team, you will be afforded the opportunity to purchase more cards.
>
> Each inmate will be limited to no more than eight (8) photocopy cards in his possession.

Plaintiff asserts that "[t]his restriction does violence to the First Amendment right of free expression, as well as the Sixth Amendment right of access to the courts." Plaintiff further asserts that the restriction effecting his constitutional rights serves no legitimate penological interest. Plaintiff also advises that his Unit Team only meets twice a year, and he has named its members as Defendants in his legal actions.

On April 22, 2010, Plaintiff filed a Notice Adding New Defendant naming Case Manager Beverly Smith as a Defendant. (Document No. 16.) Plaintiff makes Case Manager Smith a Defendant because she opened his legal mail in his presence on April 19, 2010, and then read it in violation of 28 C.F.R. § 541.12 which, among other things, provides that inmates have "the right to unrestricted and confidential access to the courts by correspondence (on matters such as the legality of your conviction, civil matters, pending criminal cases, and conditions of your imprisonment)."

On May 3, 2010, Plaintiff filed a Memorandum and New Information. (Document No. 15.) Plaintiff reported that Warden Berkebile issued a Memorandum on April 26, 2010, limiting the number of postage stamps which inmates could purchase. The Memorandum, a copy of which Plaintiff attached, stated as follows respecting postage stamps:

> Postage stamp purchases will be decreased from 60 to 20 first class, domestic, one ounce mailings each week ($8.40). Your Unit Manager may authorize additional purchases based on a demonstrated need.
>
> Program Statement 5580.06 Personal Property, Inmate allows you to maintain 60 first class, domestic, one ounce, mailing postage stamps ($26.40).

Plaintiff contends that limiting the number of first class potage stamps which inmates can purchase to twenty is a "clear violation of First, Fifth, and Sixth Amendments by defendant Berkebile . . . in keeping with the schemes of the defendant class to deny access to free expression, communication with loved ones, due process requiring multiple copied parties by court rules, and access to those same courts."

On May 12, 2010, Plaintiff filed a Petition for Temporary Restraining Order and Preliminary Injunction. (Document No. 18.) Plaintiff stated that Defendants allow inmates to purchase no more than two copy cards providing for twenty copies each and twenty first class stamps per week. Plaintiff alleged that Defendants induced him and other inmates to sign a "TRULINCS [Trust Fund Limited Inmate Communication System] Agreement and Declaration" under which inmates may communicate with members of the community by email representing that participation in the TRULINCS Program is voluntary when it is not and refused to provide him with postage stamps sufficient to mail documents to Courts as they were due. Plaintiff attached his Declaration stating that Defendants reduced the number of postage stamps which inmates could purchase to force their participation in TRULINCS. Plaintiff requested that the Court order Defendants "to immediately cease and desist any actions which have the effect of (a) violating prisoners right to attorney-client privilege in mail, (b) limiting captives' right to purchase the means of free expression and court access, including stamps, copy cards and mailing envelopes, and (c) defrauding prisoners out of their constitutional right to mail and phone privileges, by Temporary Restraining Order until a Preliminary Injunction hearing can be held."

On May 20, 2010, Plaintiff filed a New Notice of Adding a Defendant naming Commissary Officer Treadway. (Document No. 19.) Plaintiff makes Officer Treadway a Defendant because he refused to give Plaintiff and other inmates the number of stamps which they requested for submitting legal work and communicating with their families.

On June 15, 2010, Plaintiff filed a Joinder of New Defendants naming Counselor John Grimes, Medical Officer White, Officer Michael Cutright, Supervising Attorney Debbie Stevens and Counselor Kevin Canterbury. (Document No. 20.) Plaintiff makes Counselor Grimes a Defendant alleging that he "is in many ways the kingpin of the scheme to deny constitutional access to remedy

which is at the heart of the complaint." Plaintiff claims that Counselor Grimes has engaged in a scheme to make the administrative remedy process at FCI Beckley unavailable to Plaintiff and other inmates thereby effecting their constitutional right of access to the Courts. Plaintiff makes Medical Officer White a Defendant alleging that he assaulted and threatened Plaintiff in retaliation when Plaintiff attempted to submit an Informal Request to Staff (BP-8) with respect to his medical and dental conditions. Plaintiff makes Officer Cutright a Defendant alleging that he verbally and physically assaulted Plaintiff when Mr. Strickland visited him. Plaintiff makes Supervising Attorney Debbie Stevens a Defendant alleging that she has advised prison staff and administrators that they are immune from liability for their actions thereby giving them confidence that they can continue to refuse access to the administrative remedy process, retaliate against inmates who attempt to file administrative remedy forms and deny their access to the Courts. Plaintiff makes Counselor Kevin Canterbury a Defendant alleging that he has refused to provide an inmate an administrative remedy form.

 Plaintiff also filed a Preliminary Filing of Evidence as a Precautionary Measure on June 15, 2010. (Document No. 22.) Anticipating that prison employees would seize affidavits and evidence which he had gathered, Plaintiff submitted them for filing. They include, among other things, Plaintiff's Affidavits and the Affidavits and Declarations of other inmates respecting the matters about which Plaintiff complains; a list of incidents indicating prison employees' refusal to provide administrative remedy forms, retaliatory conduct and tampering with the mail; and envelopes from Courts addressed to Plaintiff, .

 On August 17, 2010, Plaintiff filed a handwritten letter stating that he had prepared an Amended Complaint including Affidavits and Exhibits and intended to file it but was unable to do so because the Camp at FCI Beckley was on lock down. Having just received the undersigned's

Proposed Findings and Recommendation in <u>Woltz v. Berkebile</u>, Civil Action No. 5:09-1177, Plaintiff was concerned that the undersigned would issue a Proposed Findings and Recommendation in this case before he could file his Amended Complaint and stated that "I wish to preserve my right to file an amended complaint before the magistrate issues his denial recommendation in 5:10-cv-0095 as well." Plaintiff therefore requested leave to file an Amended Complaint. He also reported that "[t]he illegal mail tampering continues . . ." stating that Defendants had begun to open, copy and then deliver his legal mail to him in person. Having filed his letter requesting leave to file an Amended Complaint, Plaintiff filed his First Amended Complaint on August 17, 2010, as well. (Document No. 29.) Plaintiff charges that Defendants have engaged in a mail tampering scheme by opening, inspecting and delaying the delivery of incoming and outgoing legal mail from Mr. Strickland and the Courts in violation of the Constitution, law and BOP regulations. (<u>Id.</u>, ¶¶ 3, 11, 19 and 22.) Respecting incoming mail, Plaintiff alleges that Defendants opened mail clearly designated as coming from attorney Strickland (<u>Id.</u>, ¶¶ 22 and 23.) and the Courts (<u>Id.</u>, ¶¶ 30 and 31.) without him being present many times. Plaintiff also alleges that Defendants searched his locker and took his legal files. (<u>Id.</u>, ¶ 25.) Plaintiff further charges that Defendants imposed unconstitutional restrictions upon access to the Courts by depriving inmates of copy cards, postage stamps and typewriter ribbons and limiting the number of postage stamps and copy cards which inmates could purchase (<u>Id.</u>, ¶¶ 33 and 37.), blocking email communications with legal counsel among others (<u>Id.</u>, ¶ 53.) and making it impossible to exhaust administrative remedies (<u>Id.</u>, ¶¶ 54 - 56.). It further appears that Plaintiff is alleging that the Camp's law library is inadequate. (<u>Id.</u>, ¶ 61.) Plaintiff requests that the District Court order that Summonses be issued, the parties hold a conference for the scheduling of this case and "any reviewer . . . examine the wealth of extrinsic evidence that has been provided . . . which bears directly on the allegations in this suit . . .."

**THE STANDARD**

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 -328, 109 S.Ct. at 1833. A complaint is malicious when it contains allegations which the plaintiff knows to be false, it is a part of a longstanding pattern of abusive and repetitious lawsuits or it contains disrespectful or abusive language. See In re Tyler, 839 F.2d 1290, 1293 (8th Cir. 1988). A complaint fails to state a claim upon which relief can be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

**DISCUSSION**

Naming administrators and Bureau of Prisons employees at FCI Beckley as Defendants, Plaintiff alleges violations of his constitutional rights. Plaintiff's claims are therefore properly considered under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395 - 397, 91 S.Ct. at 2004 -

2005. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

### A. Exhaustion of Administrative Remedies and Retaliation.

The Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] Woodford v. Ngo, 548 U.S. ___, 126 S.Ct. 2378, 2382 - 2383, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 922, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

remedies is also required when injunctive relief is requested. <u>Goist v. U.S. Bureau of Prisons</u>, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), *aff'd*, 54 Fed.Appx. 159 (4th Cir. 2003), *cert. denied*, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). The Fourth Circuit has determined that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. <u>Anderson v. XYZ Correctional Health Services</u>, 407 F.3d 674 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in <u>Anderson</u>, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

"[T]here is no futility exception to the PLRA's exhaustion requirement." <u>Massey v. Helman</u>, 196 F.3d 727, 733 (7th Cir. 1999), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001). Inmates have no constitutional right to participate in an administrative remedies process. See <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir.)<u>, cert. denied</u>, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994); <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991). "[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." <u>Flick</u>, 932 F.2d at 729.

When an administrative remedies process exists, the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. <u>Dale v. Lappin</u>, 376 F.3d 652, 656 (7th Cir. 2004);

Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.) If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Bivens action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-122 (2d Cir. 2001) (*overruled on other grounds*), a § 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must

be exhausted before the filing of a suit in Federal Court.

While inmates have no constitutional right to participate in an administrative remedy process and when a process is in place, merely preventing inmates from participating in it makes the process unavailable such that exhaustion becomes unnecessary, allegations of retaliation against inmates for participating in the process "give rise to a viable constitutional claim[.]" Delgado v. Ballard, 2010 WL 3812358, *1 - 2 (S.D.W.Va.)(Judge Copenhaver). But claims of retaliation are viewed with skepticism. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)("[W]e believe that *in forma pauperis* plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more that naked allegations of reprisal to survive § 1915(d). To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation."). To state a claim of retaliation in violation of First Amendment rights under Bivens, an inmate must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right. A claim of retaliation that fails to implicate any constitutional right 'lacks even an arguable basis in law,' [Neitzke, 490 U.S.] at 328, 109 S.Ct. at 1833, and is properly subject to dismissal under § 1915(d)." Adams, 40 F.3d at 75. Thus, an inmate must allege facts specifically indicating that prison officials retaliated against him for exercising a constitutional right. Finally, an inmate must alleged facts indicating that the retaliatory acts actually impacted his exercise of the constitutional right. American Civil Liberties Union of Maryland v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993)("Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.")

It is not evident that Plaintiff exhausted administrative remedies with respect to his claims in

this matter, but this does not preempt Plaintiff's claims at this juncture. Rather, pursuant to 28 U.S.C. § 1915A(b)(1), the focus is upon whether Plaintiff's claims are frivolous or fail to state a claim for which relief can be granted. Plaintiff claims that Defendants have made the administrative remedies process unavailable at FCI Beckley thereby depriving him of access to the Courts. If, however, Defendants have made exhausting administrative remedies impossible by refusing to provide administrative remedy forms as Plaintiff alleges, it does not follow that Plaintiff has been denied access to the Court. Indeed, having filed his Complaint, Plaintiff may proceed upon his claims if they survive Section 1915A consideration though he has not exhausted administrative remedies if he proves the unavailability of the administrative remedy process. Assuming that Defendants have made exhausting administrative remedies impossible for Plaintiff as Plaintiff alleges, Plaintiff nevertheless has access to the Court and his constitutional right of access to the Courts is not violated. Plaintiff further alleges that Defendants not only made the administrative remedies process unavailable, they retaliated against him for filing administrative complaints and initiating Court proceedings. This allegation implicates Plaintiff's constitutional right of access to the Courts, but Plaintiff does not allege that Defendants' retaliatory acts actually impacted that constitutional right nor can he. Plaintiff's past litigious conduct informs the Court. See Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). As noted above, Plaintiff has initiated several actions in this Court, five after he initiated this matter. He has also initiated several actions in the Western District of North Carolina. Assuming that Defendants have retaliated against Plaintiff for filing administrative complaints and initiating lawsuits against them, it cannot be said that Plaintiff's right of access to the Courts has been impaired. Because Plaintiff has not and cannot demonstrate that Defendants' alleged retaliatory actions impacted his constitutional right of access to the Courts, Plaintiff has not stated a claim of retaliation for which relief can be granted.

B.   **Right of Access to the Courts.**

The United States Supreme Court discussed the right of prisoners to access to the Courts in Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L. Ed.2d 606 (1996). Making it perfectly clear that prisoners do not have a right *per se* to a law library or legal assistance, the Lewis Court explained and elaborated upon its earlier decision in Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L.Ed.2d 72 (1977), as follows:

> The right that Bounds acknowledged was the (already well-established) right of *access to the courts*. In the cases to which Bounds traced its roots, we had protected that right by prohibiting state prison officials from actively interfering with the inmates' attempts to prepare legal documents, or file them and by requiring state courts to waive filing fees, or transcript fees for indigent inmates. * * * In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. * * * Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the law library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 518 U.S. at 350 - 51, 116 S. Ct. at 2179 - 80. [Emphasis in opinion; citations omitted.]

It is clear from the Lewis Court's decision that a Complaint alleging deprivation of the right to access to the Courts must include a statement indicating some palpable actual injury. The Lewis Court stated in its Syllabus as follows:

> [T]o establish a Bounds violation, the actual injury that an inmate must demonstrate is that the alleged shortcomings in the prison library or legal assistance program have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. This requirement derives ultimately from the doctrine of standing. Although Bounds made no mention of an actual injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite.

Lewis, 518 U.S. at 343, 116 S.Ct. 2176. Conclusory allegations will not suffice. A Complaint

alleging deprivation of the right of access to the Courts must contain specific allegations respecting an injury which was actually sustained by the inmate as a result of the policies and procedures in effect at the place of incarceration or the conduct of prison officials. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).

Opening and reading an inmate's legal mail can constitute a violation of the constitutional right of access to the Courts. Guajardo-Palma v. Martinson, 622 F.3d 801, 802 (7th Cir. 2010); Merriweather v. Zamora, 569 F.3d 307, 316 - 317 (6th Cir. 2009); Simkins v. Bruce, 406 F.3d 1239, 1243 (10th Cir. 2005). Consistently with the Lewis standard, allegation and ultimately proof is required that the opening of legal mail hindered or prevented the inmate's efforts to pursue their legal claims. Wardell v. Duncan, 470 F.3d 954, 959 (10th Cir. 2006). Likewise respecting postage stamps, copy cards and typewriter ribbons, the inmate must allege and eventually prove that the unavailability and/or restrictions upon the purchase of such supplies actually hindered or prevented him from effectively processing his claims in Court.

Plaintiff claims that Defendants have opened, inspected and delayed the delivery of incoming and outgoing legal mail from Mr. Strickland, an attorney, and the Courts in violation of the Constitution, law and BOP regulations. Plaintiff further claims that Defendants have made supplies for accomplishing legal work unavailable or imposed restrictions on them which impact his constitutional right of access to the Courts. Plaintiff has failed, however, to state any facts or circumstances indicating or creating any basis for inferring that he has sustained actual injury as a consequence of the Defendants' alleged conduct. Plaintiff has not stated that he has been hindered or adversely impacted in any way in initiating Court proceedings or litigating his cases. Assuming, therefore, that all of the facts stated in Plaintiff's documents are true and construing them liberally, it is evident beyond doubt, especially in view of the number of cases which Plaintiff has initiated

in this Court and the Western District of North Carolina, that Plaintiff can prove no set of facts in support of his claim that he has been and is being deprived of access to the Courts which would entitle him to relief, and this matter should be dismissed.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's requests for injunctive relief (Document Nos. 12 and 18.), **DISMISS** this matter and **REMOVE** it from the Court's docket.

Plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984).

Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff who is acting *pro se*.

Date: January 31, 2011.

R. Clarke VanDervort
United States Magistrate Judge